A ROYAL FLUSH, INC.,
 *Plaintiff,*

  v.
           No. 3:18-cv-01206 (VAB)

ANIR ARIAS,
 *Defendant.*

**RULING AND ORDER ON THE MOTION FOR A PRELIMINARY**
**INJUNCTION**

On July 30, 2018, A Royal Flush, Inc. ("Plaintiff" or "A Royal Flush") moved for a

preliminary injunction against Anir Arias ("Defendant" or "Mr. Arias") to enforce written

agreements allegedly barring him from working for A Royal Flush competitors in general for one

year after leaving the company and, for one competitor, United Site Services, Inc. ("United Site

Services"), for two years after leaving the company.

For the reasons discussed below, the Motion for Preliminary Injunction is **GRANTED**

**IN PART AND DENIED IN PART**.

The December 28, 2017 Restrictive Covenants Agreement shall be enforceable against

Mr. Arias and, until July 13, 2019, Mr. Arias is enjoined from disclosing any confidential

customer information related to A Royal Flush clients, proprietary business information related

to A Royal Flush, or working in any capacity where his services would be used for direct

competition with A Royal Flush in the States of Connecticut, New York, New Jersey,

Massachusetts, and Pennsylvania.

The July 11, 2018 Employment Agreement, however, cannot provide a basis for a

preliminary injunction and the request for such relief under this agreement therefore is denied.

# I. FACTUAL AND PROCEDURAL HISTORY

## A. Factual Findings[1]

For two days, September 6, 2018 and September 12, 2018, the Court heard evidence on A Royal Flush's motion for a preliminary injunction. Twenty-five exhibits were entered into evidence and five witnesses testified: (1) Timothy F. Butler, majority shareholder and Chairman of the Board of Directors of A Royal Flush; (2) Thomas A. Butler, Jr., Chief Executive Officer of A Royal Flush; (3) Alexandra Townsend, a Vice-President of A Royal Flush; (4) Anir Arias, A Royal Flush's former New York Regional Manager and currently an employee for United Site Services; and (5) Ron Carapezzi, the President and Chief Executive Officer of United Site Services. As a result of the evidence presented at the two-day hearing and the parties' written submissions, the Court finds the following:

Founded more than two decades ago by five friends, A Royal Flush provides portable toilets and trailers for specialty events, municipalities, and construction sites. Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction, ECF No. 11. A Royal Flush's principal office is in Bridgeport, Connecticut. Aff. of Timothy F. Butler, Mot. For Preliminary Injunction, ECF No. 13 ("TFB Aff."). There are additional A Royal Flush offices in Holyoke, Massachusetts; Newark, New Jersey; Philadelphia, Pennsylvania; and the Bronx; New York. *Id.* A Royal Flush does business throughout the State of Connecticut the five boroughs of New York City and the New York State counties of Westchester, Rockland, Orange, Nassau and Putnam, and Philadelphia, Pennsylvania and the surrounding counties, as well as southeastern and

---

[1] The parties' written submissions, filed before the evidentiary hearing, are as follows: Plaintiff's Mot. for Preliminary Injunction; ECF No. 11, Defendant's Memorandum in Opposition to Mot. for Preliminary Injunction, ECF No. 33; and Plaintiff's Reply to Defendant's Response to Mot. for Preliminary Injunction, ECF No. 38.

western Massachusetts. *Id.* According to Timothy Butler, A Royal Flush also does business in Rhode Island and Delaware.

United Site Services is a major competitor of A Royal Flush and has a significant national presence, with offices in well over twenty states. United Site Services' national presence has grown through acquisitions of other smaller companies, including a prior attempt to purchase A Royal Flush.

In April of 2017, William A. Malone, A Royal Flush's then president and majority shareholder, committed suicide. Since then, there have been organizational changes as well as employee departures, including Mr. Arias as well as Chris Ploof, A Royal Flush's former event and restrooms trailer specialist, and Anthony Yetskofsky, A Royal Flush's former Fleet Manager. *Id.* Mr. Arias left A Royal Flush to work for United Site Services in July 2018.

Mr. Arias began working for A Royal Flush of New York II, Inc. ("A Royal Flush of New York II"), a New York Affiliate of A Royal Flush, in January of 2014. Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 33. He rose in the company to become New York/New Jersey Regional Manager, with responsibility for managing A Royal Flush's distribution throughout New York and New Jersey; he ran operations, managed delivery routes, oversaw personnel, coordinated with mechanics, supervised set up and breakdown for special events, and dealt with customer complaints.

This case centers around three alleged agreements between and among Mr. Arias, A Royal Flush, and A Royal Flush NY: (1) an August 4, 2017 Confidentiality Agreement; (2) a December 28, 2017 Restrictive Covenants Agreement; and (3) a July, 11, 2018 Employment Agreement.

### 1. August 4, 2017 Confidentiality Agreement with A Royal Flush

In August of 2017, A Royal Flush instituted a company-wide policy of requiring the signing of an employee confidentiality and non-disclosure agreement as part of continued employment with A Royal Flush.

Under this confidentiality agreement, Mr. Arias, then a Senior Dispatcher for the New York Area, agreed that he "will not disclose, use, lecture upon or publish any of the Company's Confidential and Proprietary Information." Plaintiff's Ex. 2. This prohibition included marketing strategies, customer information, vender information, and service routes. Mr. Arias also agreed that A Royal Flush "shall have the right to enforce this agreement and any of its provisions by injunction." *Id.*

### 2. December 28, 2017 Restrictive Covenants Agreement with A Royal Flush

In December 2017, in exchange for accepting a raise, a promotion to regional manager, and a bonus, Mr. Arias signed another agreement: a Restrictive Covenants Agreement that contained non-competition, non-solicitation, and non-disclosure covenants. Plaintiff's Ex. 3. ("Ex. 3"). Four sections of the Restrictive Covenants Agreement are relevant to this case.

First, Section 2 of the Restrictive Covenants Agreement establishes that "for a period of 12 months from the date of termination," Mr. Arias "shall not engage in any business or activity, or legally, equitably, or beneficially, directly or indirectly, in any capacity . . . in the type of business the company is engaged in, and with any business which is in competition with the Company." Ex. 3.

Second, Section 7 of the Restrictive Covenants Agreement states that during Mr. Arias' employment, and for a period of twelve months thereafter, he shall not solicit any business from current or prospective customers of the company within the "States of Connecticut and New

York, Counties of Westchester and Rockland, the entire state of New Jersey, southeastern Massachusetts and Philadelphia, PA . . ." Ex. 3. Section 7 also contains a non-competition agreement that prohibits Mr. Arias from soliciting "employment or engagement" with a competitor for a period of twelve months. *Id.*

Third, Section 9 of the Restrictive Covenants Agreement acknowledges that "the Company shall be entitled to temporary and permanent injunctive relief . . .[and] attorney's fees and costs incurred in connection with enforcing its rights," among other remedies.

Fourth, Section 10 of the Restrictive Covenants Agreement fixes the terms to interpretation and enforcement "according to the laws of the State of New York without giving effect to the principles of conflicts of law thereof." This section later states that the Restrictive Covenants Agreement shall be binding upon "successors and assigns and may be transferred by the Company or to any successor (whether by merger, consolidation, sale of assets or otherwise) or assigns." Ex. 3. Finally, this Section permits a court to reform and construe the Restrictive Covenants Agreement "to provide the protected party the maximum protection permissible by law." *Id.*

After signing the Restrictive Covenants Agreement, Mr. Arias took a promotion and advanced role with A Royal Flush. According to Mr. Arias' testimony, he was in charge of dispatch operations for the New York and New Jersey regions. This new role involved supervising dispatch operators, scheduling deliveries, managing truck routes, coordinating with mechanics, addressing customer service issues, and overseeing on-site setup, attendance, and breakdown of portable toilets.

### 3. A Royal Flush Absorbs A Royal Flush of New York II

According to hearing testimony from Timothy and Thomas Butler, A Royal Flush merged with A Royal Flush of New York II, which resulted in A Royal Flush controlling A Royal Flush of New York II's assets and Thomas Butler becoming the majority shareholder of A Royal Flush. Mr. Arias then began receiving his salary from A Royal Flush and became its employee.

### 4. Mr. Arias Signs June 2018 Employment Agreement with United Site Services

On June 18, 2018, Mr. Arias entered an employment agreement with United Site Services. During the course of negotiations, United Site Services sent Mr. Arias his offer for employment as a Premier Trailer Solutions Manager based in Westborough, Massachusetts on June 15, 2018. Plaintiff's Ex. 10 ("Ex. 10"). The agreement notes the existence of the Restrictive Covenants Agreement with A Royal Flush. The offer letter states that Mr. Arias' new role "shall strictly preclude [his] participation in any activities that may be deemed in violation of the provisions of the Restrictive Covenants Agreement." *Id.*

On June 18, 2018, Mr. Arias accepted the terms and signed this offer letter. *Id.* As a condition of his employment, Mr. Arias signed employment and confidentiality agreements with United Site Services, effective July 9, 2018. Plaintiff's Ex. 11.

### 5. Mr. Arias Continues Employment Negotiations with A Royal Flush during the end of June and early July of 2018

Although Mr. Arias officially began working for United Site Services on July 9, 2018, he continued to work at A Royal Flush until July 13, 2018. TFB Aff. In fact, during this time period, he engaged in ongoing employment negotiations with A Royal Flush until his departure. Around June 22, 2018, Mr. Arias advised A Royal Flush that he had been approached by United

Site Services and intended to leave A Royal Flush. A Royal Flush officers and Mr. Arias engaged in back-and-forth negotiation with the goal of keeping Mr. Arias with A Royal Flush. Plaintiff's Exs. 4–6, 8.

Even before these negotiations, according to the testimony of Timothy Butler, A Royal Flush earlier had agreed to a salary increase, a bonus opportunity, and a new four-door pickup truck for Mr. Arias' personal and professional use. TFB Aff. The negotiations in June of 2018 discussed an additional salary increase, a bonus opportunity, an ownership interest and other benefits. In exchange, Mr. Arias would agree to a new employment agreement, which contained a non-compete provision that prohibited employment with a competitor in any state where A Royal Flush had "offices, facilities or customers" without A Royal Flush consent for a period of one year and a restricted period of two years for United Site Services. Plaintiff's Exs. 5, 6, 7.

On June 27, 2018, Timothy Butler sent Mr. Arias an e-mail, stating that the Plaintiff's management had agreed to the offer terms Mr. Butler and Mr. Arias discussed. Plaintiff's Ex. 4. Mr. Arias stated that he would review the agreement, when he received it. *Id.*

On July 10, 2018, Thomas Butler, Plaintiff's Chief Executive Officer, sent Mr. Arias by e-mail an employment agreement for the position of Regional Manager of A Royal Flush's New York Region. Plaintiff's Ex. 5. This agreement included a salary increase, a guaranteed bonus, use of an employer vehicle, tuition reimbursement, and eligibility to participate in the employer's stock option plan. *Id.*

Section 8 of the Employment Agreement outlined new restrictive covenants that would prohibit Mr. Arias from working for a competitor in any state for which the Plaintiff had "office, facilities, or customers, or any state, province, or similar subdivision of any other country in the world in which the [A Royal Flush had] offices, facilities, or customers, without the prior written

consent of [A Royal Flush]." *Id.* The provision further defines a competitor as "any business that Employee knows the Employer conducts or proposes to conduct . . . rental, delivery, installation, maintenance, and removal of portable toilets and restrooms . . ." An additional provision was added for United Site Services, which increased the restricted period to two years. *Id.* According to Section 10, the agreement "shall be construed and enforced in accordance with the law of the State of Connecticut . . ." *Id.* Thomas Butler signed this agreement on July 10, 2018. *Id.*

In response to Thomas Butler's e-mail, on July, 11, 2018, Mr. Arias replied: "I am glad we were able to make this work." Plaintiff's Ex. 6. To that e-mail, Mr. Arias attached a copy of the Employment Agreement, with handwritten edits to the original. *Id.* Mr. Arias modified and initialed changes to his base salary, tuition reimbursement provision, the stock option provision, and two modifications to separation pay provisions. *Id.* Mr. Arias then signed and dated the amended agreement for July 11, 2018. *Id.*

On July 12, 2018, Thomas Butler sent Mr. Arias, by e-mail, another employment agreement and stated "[h]ope we are all good on this one!" Plaintiff's Ex. 8. The updated agreement adopted Mr. Arias' amendments to his base salary, tuition reimbursement, and one of his modifications to a separation pay provision. *Id.* The other separation pay provision and stock options provision, however, remained unchanged.

Mr. Arias did not sign this last version. According to his testimony, the failure to provide the stake in ownership previously promised prompted his decision to resign. Mr. Arias then informed Thomas Butler of his decision to resign on July 13, 2018 by text message. Both Timothy and Thomas Butler tried to talk with Mr. Arias on July 13th, but were unable to do so.

On July 14, 2018, having learned of Mr. Arias' employment with United Site Services, Timothy Butler sent Mr. Arias a cease-and-desist letter, alleging violations of the December 28,

2017 Restrictive Covenants Agreement and the July, 11, 2018 Employment Agreement. Referring to the Restrictive Covenants Agreement, the cease-and-desist letter stated that Mr. Arias was prohibited from employment and solicitation of customers for twelve months. Plaintiff's Ex. 9. Then, referring to the July 11, 2018 Employment Agreement, the letter stated that Mr. Arias was restricted from working for United Site Services for two years after termination. *Id.* The letter reiterated that United Site Services was a direct competitor to A Royal Flush, and that A Royal Flush would seek injunctive relief, damages, and reimbursement of legal fees under the Restrictive Covenants Agreement and July 11, 2018 Employment Agreement. *Id.*

According to Mr. Arias' testimony, his work as a Premier Trailer Solutions Manager has been exclusively in the California market, with plans to expand to Texas. While he does primarily work from his home in New York, he claims not to have discussed doing work for United Site Services in A Royal Flush's geographic areas  of operation, and claims not to have worked on projects competing with A Royal Flush Services. Instead, Mr. Arias testified to having worked on developing facilities for housing and maintenance of trailers in California.

Nevertheless, since his departure from A Royal Flush, Alexandra Townsend, an A Royal Flush Vice-President received data from the cellphone company associated with Mr. Arias' A Royal Flush cellphone. Based on A Royal Flush and cellphone company records, Mr. Arias had significant contact with three current United Site Services employees: Chris Ploof, A Royal Flush's former event and restrooms trailer specialist, Anthony Yetskofsky, A Royal Flush's former Fleet Manager, and Ron Rotti, a Senior Vice President at United Site Services that Mr. Arias knew from when United Site Services explored purchasing A Royal Flush.

From May through August, 2018, according to Ms. Townsend's testimony, there were ninety-three telephone calls and four hundred text messages between Mr. Ploof and Mr. Arias.

Plaintiff's Exs. 16–18. During that same time period, there were eighteen calls and seventy-nine text messages between Mr. Yetskofsky and Mr. Arias. *Id.* And there were twelve calls and forty-three text messages between Mr. Rotti and Mr. Arias. *Id.*

While Mr. Arias testified that none of these communications involved confidential information from A Royal Flush, because Mr. Arias was less than forthright in his contractual negotiations with both A Royal Flush and United Site Services, the Court refuses to accept his representation on this issue. Nevertheless, there is no specific evidence in this record regarding a disclosure of A Royal Flush's confidential information by Mr. Arias to United Site Services. Nor is there any evidence that Mr. Arias has been working on projects he would have worked on while at A Royal Flush or that he is engaged in specific work activities within any of the states or areas where A Royal Flush conducts business.

Mr. Arias' contract with United Site Services provides for an office location in Massachusetts. Ex. 10**.** The testimony at the hearing, however, provided no evidence that Mr. Arias currently works at this location or conducts significant business from there or in the Northeast region. Indeed, Ron Carapezzi, the President and Chief Executive Officer of United Site Services, testified that Mr. Arias does not and will not work within A Royal Flush's geographic areas of operation. And Mr. Arias does not work in the portable toilet business of United Site Services. Instead, Mr. Arias primarily works with a team responsible for identifying and developing trailer hub facilities for United's VIP trailer platform, which involves the housing of high-end restroom and shower trailers for specialty events. This work requires that Mr. Arias identify real estate locations for the trailer hubs, develop facility infrastructure, oversee equipment installation, and hire personnel to run the facilities. United Site Services' goal is to house, maintain, and deliver high-end trailers out of these new specialty facilities beginning in

California. The company then intends to replicate that process in Texas, the Pacific Northwest Region, and Mountain West Region before eventually migrating east.

While Mr. Arias did recently work on an event in Nevada, the "Burning Man" festival, there is nothing in the record to suggest that this activity either resulted in any competition within A Royal Flush's geographic areas of operation or resulted in Mr. Arias relying on any confidential information or other knowledge that he would have learned solely from his work at A Royal Flush.

### B. Procedural History

A Royal Flush filed this civil action on July 16, 2018 in the Superior Court of Connecticut. On July 20, 2018, Mr. Arias removed the case to this Court. ECF No. 1. On the same day, the Court signed a Standing Protective Order. ECF No. 5. On July 26, 2018, the Court granted a motion for Mr. Arias' attorney to proceed *pro hac vice*. ECF No. 10. Then, on July 30, 2018, A Royal Flush filed an emergency motion for preliminary injunction. ECF No. 11.

On August 1, 2018, the Court held a telephonic status conference. ECF No. 19. After the status conference, the Court issued a date for a motion hearing for A Royal Flush's emergency motion for preliminary injunction and a scheduling order that established the briefing schedule. ECF Nos. 20, 21.

On August 13, 2008, the Court found as moot Mr. Arias' motion to continue due to unavailability of witnesses, granted Mr. Arias' motion to continue, and granted an extension to file a reply for the motion for preliminary injunction. ECF No. 30. On the same day, the Court held a telephonic status conference. *Id.* After the conference, the Court issued a scheduling order establishing a new briefing schedule for A Royal Flush's motion for preliminary injunction. ECF No. 31.

On September 6, 2018 and September 12, 2018, the Court held two days of hearings on the motion for a preliminary injunction.

1.    **A Royal Flush's Arguments in Support of Motion for Preliminary Injunction**

A Royal Flush seeks a preliminary injunction under the December 28, 2017 Restrictive Covenants Agreement and the July 11, 2018 Employment Agreement, which prohibit Mr. Arias from accepting employment with any business that competes with A Royal Flush and from soliciting any potential or actual customer of A Royal Flush for one year after termination from A Royal Flush and for two years with United Site Services. According to A Royal Flush, Mr. Arias' continued employment with United Site Services violates the covenants set forth in the agreement and will irreparably harm A Royal Flush, if Mr. Arias is allowed to continue his employment.

A Royal Flush further contends that irreparable harm will come to the company if the former New York/New Jersey Regional Manager is allowed to violate the restrictive covenants in the employment agreement by working for United Site Services. This harm stems from the intimate knowledge Mr. Arias has of A Royal Flush's business, potential disclosures of A Royal Flush customer information, use of confidential or proprietary information, and prospective solicitation of A Royal Flush's clients. All aforementioned potential harms are valuable business assets to A Royal Flush that it is entitled to protect by enforcing compliance with the restrictive covenants of the July 11, 2018 Employment Agreement.

A Royal Flush also contends that it has a strong likelihood of success on the merits because Mr. Arias entered into an agreement with valid and enforceable restrictive covenants. A Royal Flush argues that, on July 11, 2018, Mr. Arias executed and returned the employment agreement, codifying the terms A Royal Flush had previously assented to. In response, A Royal

Flush promised to give Mr. Arias a raise, guaranteed a bonus, offered tuition reimbursement, allowed for personal and professional use of a company truck, and accepted increased separation pay in the event of his termination. A Royal Flush argues that these financial incentives, promised at the same time Mr. Arias executed the restrictive covenants of the employment agreement, stand as sufficient consideration for the agreement.

In response to Mr. Arias' claim that there was no employment agreement on July 11, 2018, A Royal Flush contends that the post-execution conduct demonstrates mutual assent by the parties. Timothy Butler ordered that Mr. Arias' July paycheck be adjusted to include his raise in salary. Similarly, Mr. Arias deposited the check with the increased amount into his bank account. These actions provide objective indication that both parties assented to the terms of the employment agreement.

A Royal Flush also argues that it has standing to enforce the Confidentiality Agreement and the December 28, 2017 Restrictive Covenants Agreement to support a preliminary injunction prohibiting Mr. Arias from working for United Site Services. Moreover, Mr. Arias' current employment with United Site Services violates the terms of the agreements because there is a continued risk that he would assist United Site Services employees with their business in A Royal Flush's geographic areas of operation, even if his United Site Services employment is in a different role in another geographic service area.

Additionally, A Royal Flush maintains that the restrictive covenants are reasonable in their duration and scope, which supports the likelihood of success on the merits. A Royal Flush contends that both one- and two-year non-compete provisions are reasonable under Connecticut law. And the confidentiality agreements related to customer information are also reasonable restrictions because the information is not public. Moreover, the geographic scope of the

covenant is reasonable because it is limited to only those areas where A Royal Flush operates. In sum, these covenants protect A Royal Flush because it has a legitimate interest in protecting itself from competitive activities by Mr. Arias because of the intimate knowledge he gained, while employed at A Royal Flush. Likewise, these covenants do not cause Mr. Arias to sacrifice his livelihood because he can work for employers that would not violate the covenant and enforcement of this provision is not against the public interest.

Finally, the balance of the equities weigh in favor of granting the motion for preliminary injunction because Mr. Arias' employment with A Royal Flush's largest competitor puts it at a substantial risk for unfair competition and disclosure of confidential information. Contrarily, Mr. Arias' interest in pursuing employment with an employer that is not a competitor as a dispatcher, consistent with the restrictive covenants, is insubstantial.

### 2. Mr. Arias' Arguments in Opposition to Motion for Preliminary Injunction

Mr. Arias contends that the restrictive covenants at issue are neither reasonable nor geographically limited. The unreasonableness stems from the United Site Services restriction not being limited—ultimately, reaching well beyond A Royal Flush's geographic areas of operation. Mr. Arias asserts that his employment, while he primarily works in his home in New York, concentrates on the western region—primarily, California and soon Texas. Because Mr. Arias work relates to service outside of the region where A Royal Flush now operates, the scope of restrictive covenants are unreasonably broad.

Mr. Arias further contends that the Confidentiality Agreement and Restrictive Covenants Agreement are unenforceable because A Royal Flush was not a party to those agreements. Rather, A Royal Flush New York II made the agreement with Mr. Arias. Because A Royal Flush was not a party to those agreements, they do not have standing to assert an equitable remedy

based on those agreements. The terms of the non-compete and confidentiality clauses therefore are not applicable, and A Royal Flush is unable to enforce either of the agreements in this case.

Mr. Arias also argues that there was no new employment agreement reached between him and A Royal Flush in July 2018. Thomas Butler signed the agreement before sending it to Mr. Arias. Mr. Arias, however, made modifications and signed the agreement. When Thomas Butler sent another agreement that did not accept all of the terms Mr. Arias modified, there was not mutual assent to the terms of an employment agreement with a definite set of terms. Mr. Arias claims that, without a viable July 11, 2018 Employment Agreement between Mr. Arias and A Royal Flush, there is no basis for equitable enforcement of the restrictive covenants A Royal Flush attempts to enforce.

Finally, even if there was an agreement, Mr. Arias has not violated the terms of any contract. Mr. Arias contends that the terms of his United Site Services employment neither contain the A Royal Flush service area, nor operate services that compete with A Royal Flush. His employment with United Site Services therefore cannot be restricted by the agreements.

## II.     STANDARD OF REVIEW

Preliminary injunctive relief is an extraordinary remedy and not a matter of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20); *see also Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

When deciding a motion for preliminary injunction, "a court may consider the entire record including affidavits and other hearsay evidence." *Johnson v. Newport Lorillard*, No. 01 Civ. 9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003). The moving party, however, must also make a "clear" or "substantial" showing of a likelihood of success if the injunction sought will alter, rather than maintain the status quo. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

## III.     DISCUSSION

Based on the factual findings above and the legal analysis below, A Royal Flush is entitled to a preliminary injunction to enforce the December 28, 2017 Restrictive Covenants Agreement, although its scope must be reformed in order to be reasonable. To the extent that the July 11, 2018 Employment Agreement would provide a basis for additional relief beyond the December 28, 2017 Restrictive Covenants Agreement, A Royal Flush's motion for preliminary injunction, however, is denied.

### A.     The Preliminary Injunction Analysis for the December 28, 2018 Restrictive Covenants Agreement

The relevant standard for a preliminary injunction is (1) whether A Royal Flush has an established right that can be enforced by preliminary injunction; (2) whether it is likely that A Royal Flush can succeed on the merits; (3) whether A Royal Flush would suffer an irreparable harm in the absence of a preliminary injunction; and (4) whether balance of the equities weigh in favor of A Royal Flush. *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

1.    **The December 28, 2018 Restrictive Covenants Agreement Creates an Enforceable Contract Right for the Purpose of Granting a Preliminary Injunction**

A preliminary injunction will not be granted "unless a clear right thereto is established under the law and the undisputed facts upon the moving papers, and the burden of showing an undisputed right rests upon the movant." *First Natl. Bank v. Highland Hardwoods*, 471 N.Y.S.2d 360, 363 (1983). Contractual agreements are determined by "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 398 (1977); *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 106 (2018).

Here, Section 10 of the Restrictive Covenants Agreement states that the agreement shall be binding on any "successors and assigns and may be transferred by the Company or to any successor (whether by merger, consolidation, sale of assets or otherwise) or assigns."[2] And the same section establishes that the Restrictive Covenants Agreement "shall be interpreted and enforced according to the laws of the State of New York without giving effect to the principles of conflicts of law thereof." This Court, therefore, finds that A Royal Flush does have a contractual successor interest in the Restrictive Covenants Agreement between Mr. Arias and A Royal Flush New York II. *See e.g., Hui v. East Broadway Mall, Inc.*, 4 N.Y.3d 790, 792 (2005) ("[t]he assignment of the corporation's claim was simply a less cumbersome way of achieving

---

[2] Because the plain language in Section 1 of the Restrictive Covenants Agreement considers Mr. Arias to be "employed by A Royal Flush, Inc., and/or A Royal Flush of New York, II, and Section 10 of the agreement allows enforcement by "successors and assigns," Mr. Arias' argument attempting to distinguish A Royal Flush from A Royal Flush New York II is immaterial. *See Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 39 (2018) ("A reading of the contract should not render any portion meaningless") (citation omitted); *see also Quadrant Structured Prod. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 559–60 (2014) ("[i]n construing a contract we look to its language, for a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms") (citation omitted).

the same result, avoiding dismissal of what appears to be an otherwise meritorious claim"). Because New York law governs the Restrictive Covenants Agreement, as established in Section 10, the Court will apply New York law to determine whether a preliminary injunction should issue and, if so, in what form, with respect to the Restrictive Covenants Agreements.

## 2. The Likelihood of Success on the Merits of this Case

"[A] district court must consider whether plaintiffs have demonstrated that they are likely to prevail on the merits." *Ashcroft*, 542 U.S. at 666. Here, A Royal Flush must "demonstrate a *prima facie* showing, at least by affidavits, if not by testimony" that there is an enforceable agreement barring Mr. Arias from working for United Site Services. *See Peterson v. Corbin*, 713 N.Y.S.2d 361, 363 (2000) (finding that a conclusory affidavit is inadequate to make a showing of probable success on the merits).

A restrictive covenant in an employment agreement is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public; absence of any prong renders the covenant invalid. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–89 (1999). Under New York law, even if a defendant may not be bound to the terms of a non-compete contract they did not sign, they will be "unquestionably bound" by contracts containing restrictive covenants that they do sign. *Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 506 (2003).

Under the terms of the December 28, 2017 Restrictive Covenants Agreement, Mr. Arias is barred from employment with A Royal Flush's competitors for a period of one year. One-year employment restrictions are reasonable under New York law, which allows non-competition agreements, so long as it is reasonable in scope and geography. *See Crown IT Servs., Inc. v.*

*Koval-Olsen*, 782 N.Y.S.2d 708, 710–11 (2004) (finding that a former employee's one year ban on servicing former clients for a new consulting firm was reasonable). Thus, with respect to the length of the restrictive covenant, a year-long ban from working for a competitor is not *per se* unreasonable.

The Restrictive Covenants Agreement, however, is a complete bar on working for any company, in any location or role, which is in competition with A Royal Flush. Courts in New York find such blanket prohibitions on employment to be unreasonable. *ABC, Inc. v. Wolf*, 52 N.Y.2d 394, (1981) ("an otherwise valid covenant will not be enforced if it is unreasonable in time, space or scope or would operate in a harsh or oppressive manner"); *Reed, Roberts Assocs, Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976) ("no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment"). This broad employment exclusion is not narrowly tailored to further A Royal Flush's legitimate business interest. Rather, it provides them with unnecessarily broad authority to keep Mr. Arias from pursuing his livelihood.

Nevertheless, because Section 10 of the Restrictive Covenants Agreement permits the Court to reform the provision to give A Royal Flush the "maximum protection permissible by law," the Court finds that the maximum permissible protection would be to allow A Royal Flush to enjoin Mr. Arias from working for a competitor—but only within A Royal Flush's geographic areas of operation and in an employment capacity where his services would be in direct competition with services offered by A Royal Flush.[3] *See e.g. BDO Seidman v. Hirshberg*, 93 N.Y.2d at 394–95 (concluding "that the Appellate Division erred in holding that an entire

---

[3] Notably, this restrictive covenant language is consistent with A Royal Flush's attempted July 11, 2018, employment agreement with Mr. Arias.  Exs. 5, 6, 8.

[restrictive] covenant must be invalidated, and in declining partially to enforce the covenant to the extent necessary to protect the [employer's] legitimate interest"); *see also Karpinski v. Ingrasci*, 28 N.Y.2d 45, 52 (1971) ("[i]f in balancing the equities the court decides that [the employee's] activity would fit within the scope of a reasonable prohibition, it is apt to make use of the tool of severance, paring an unreasonable restraint down to appropriate size and enforcing it"). As a result, under the revised terms of the Restrictive Covenants Agreement, Mr. Arias may work for United Site Services—or another competitor—but he may not provide the same services as A Royal Flush in an area where A Royal Flush operates.[4]

For the foregoing reasons, plaintiff has demonstrated the requisite likelihood of success on the merits to warrant a granting of the motion for preliminary injunction.

### 3. Irreparable Harm

An irreparable harm is "any injury for which an eventual monetary award alone cannot be adequate compensation" and "the claimed injury is more than just a mere possibility, and in fact, is imminent and likely to occur absent a preliminary injunction." *Kaloyeros v. Fort Schuyler Mgmt. Corp.*, 49 N.Y.S.3d 867, 874 (2017). Under New York Law, an injunction will not be granted in relation to a restrictive covenant where it is not shown to be necessary to protect trade secrets, confidential customer lists, or to protect the former employer from an employee whose services were unique or extraordinary. *See Sutherland Glob. Servs., Inc. v. Stuewe*, 902 N.Y.S.2d 272, 274 (2010).

Here, the testimony and affidavits submitted by A Royal Flush demonstrate an irreparable harm based on Mr. Arias' ability to use proprietary information to assist United Site

---

[4] This includes Connecticut, New York, New Jersey, Massachusetts, and Pennsylvania. With respect to Delaware and Rhode Island, Plaintiff has not made a sufficient showing with respect to the company's ongoing operations to enjoin Mr. Arias from working in either state.

Services in gaining market share in A Royal Flush's geographic areas of operation. A Royal Flush is at risk of monetary loss in existing and future customer relationships, and the corresponding loss of company goodwill created from those relationships. Under New York law, the loss of clients and customer goodwill are sufficient to sustain a showing of irreparable harm for the purposes of a preliminary injunction. *See Alside Div. of Assoc. Materials Inc. v. Leclair*, 743 N.Y.S.2d 898, 899 (2002). These sorts of losses, while difficult to quantify, would constitute an imminent and irreparable injury without injunctive action.

Mr. Arias' employment with United Site Services and knowledge sharing with the company could lead directly to a dilution of market share due to customer loss and corresponding loss of goodwill in those service areas where A Royal Flush operates. And the long-term loss of customers, permanent loss of revenues, and the loss of referral business from clients add to the likelihood of A Royal Flush's irreparable injury. Mr. Arias' knowledge is highly valuable to both employers and the nature of the industry place a high value on the knowledge and experience Mr. Arias accumulated, while working for A Royal Flush. But the irreparable harm would be limited to only those states where A Royal Flush operates. As a result, A Royal Flush has demonstrated the requisite irreparable harm to support granting of the motion for preliminary injunction.

While, on this record, there is no evidence that any confidential information has been disclosed or that any impermissible activity within A Royal Flush's places of operation occurred, A Royal Flush nevertheless is entitled to an injunction in order to clarify to Mr. Arias, as well as United Site Services, what Mr. Arias may and may not do until the expiration of this Restrictive Covenants Agreement. *BDO Seidman*, 93 N.Y.2d at 391 ("[p]rotection of customer relationships the employee acquired in the course of employment may indeed be a legitimate interest"); *Reed*,

40 N.Y.2d at 308 ("restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information").

### 4. The Balance of the Equities Weigh in Favor of Granting the Preliminary Injunction

The Court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winters*, 555. U.S. at 24 (quoting *Amoco Production Co. v. Village of Gambell, AK,* 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312 (1982).

Here, the balance of the equities is in A Royal Flush's favor. A Royal Flush has spent over twenty years developing its business, while Mr. Arias has no relationships in the area independent of those developed through employment with the company. Further, Mr. Arias is not being deprived of his livelihood, as he may now work for United Site Services in another region where A Royal Flush does not operate, in a capacity with United Site Services that is not in competition with A Royal Flush, or work as a dispatcher for a company not in competition with A Royal Flush. Moreover, there is no injury to the public by enforcing this preliminary injunction based on this reconstructed non-competition provision. Indeed, "post-employment restrictive covenants go back [more than] 300 years." *BDO Seidman*, 93 NY.2d at 388.

Finally, the Court does not find persuasive Mr. Arias' argument that the restrictive covenants constitute an adhesion contract, that Mr. Arias was deceived into signing the agreement because A Royal Flush had an unfair bargaining position, or that the confidentiality and restrictive covenants agreements are inapplicable because those agreements were with A Royal Flush New York II rather than A Royal Flush. To the contrary, the evidence at the hearing

showed that Mr. Arias negotiated throughout this process, continually asking for more, if he believed A Royal Flush had not offered him enough.

The Restrictive Covenants Agreement thus is not an adhesion contract that Mr. Arias agreed to solely because a Royal Flush had an unfair bargaining position. Indeed, his voluntary assent to restricted employment opportunities weighs against him in the balance of equities. *UBS Fin. Serv., Inc. v. W. Va. Univ. Hosp., Inc.*, 660 F.3d 643, 665 (2d Cir. 2011) ("the balance of hardships tips in favor of UBS because being required to arbitrate a claim means that the party forfeits a substantial right"). As a result, A Royal Flush has demonstrated the requisite balance of equities to weigh in favor of granting of the motion for preliminary injunction.

**B.      The Preliminary Injunction Analysis for the July 11, 2018 Employment Agreement**

Having determined that the Restrictive Covenants Agreement, as modified herein, entitles A Royal Flush to a preliminary injunction, the legal issues with respect to the July 11, 2018 Employment Agreement are limited to: (1) whether this agreement is enforceable, at all; and (2) if it is enforceable, what relief beyond what has been provided by the preliminary injunction as a result of the Restrictive Covenants Agreement is available. Because the Court determines that the July 11, 2018 Employment Agreement is not enforceable, the Court need not resolve the second issue.

Although certain terms of the alleged July 11, 2018 Employment Agreement are in dispute, neither party contests that Section 10 of the Agreement specifies that Connecticut law applies. Exs. 5, 6, 8. Therefore, under the *Ashcroft* framework, this Court must find that (1) there is a recognized right that can be enforced by preliminary injunction; (2) it is likely that A Royal Flush can succeed on the merits; (3) A Royal Flush would suffer an irreparable harm in the

absence of a preliminary injunction; and (4) the balance of the equities weigh in favor of A Royal Flush. *See Ashcroft v. ACLU*, 542 U.S. at 666.

### 4.     There is No Contractual Right to Support a Preliminary Injunction

The Connecticut Supreme Court has stated that for contractual modifications to be valid, "there must be mutual assent to the meaning and conditions of the modification and the parties 'must assent to the same thing in the same sense.'" *Herbert S. Newman & Partners, P.C. v. CFC Const. Ltd. et.al.*, 236 Conn. 750, 761–62 (1996) (quoting *Lar-Rob Bus Corp. v. Fairfield*, 170 Conn. 397, 402 (1976)). Here, there is no definite agreement "to the same thing in the same sense."

On July 10, 2018, Thomas Butler, Chief Executive Officer of A Royal Flush, sent Mr. Arias by e-mail an employment agreement to work as the Regional Manager of A Royal Flush's New York Region. Ex. 5. This proposal included a salary increase, a guaranteed bonus, use of an employer vehicle, tuition reimbursement, and eligibility to participate in the employer's stock option plan. *Id.* Thomas Butler signed the agreement assenting to these terms, but Mr. Arias never did, at least with respect to all of the terms.

Instead, Mr. Arias responded with an e-mail on July 11, 2018, which contained an attachment with handwritten edits to the original employment agreement that modified and initialed changes to his base salary, tuition reimbursement provision, stock option provision, and two modifications to separation pay provisions. Ex. 6. Mr. Arias signed this proposal assenting to these new contract terms and sent the new terms to Thomas Butler and Timothy Butler by e-mail. But neither Thomas nor Timothy Butler signed this agreement.

On July 12, 2018, the agreement was modified once again. On that day, Thomas Butler sent Mr. Arias by e-mail another employment agreement, where the updated proposal adopted

Mr. Arias' modifications to his base salary, tuition reimbursement, and one of his modifications to separation pay provisions. Plaintiff's Ex. 8. But two of Mr. Arias' modifications were not adopted: the second separation pay provision and the stock options provision. Thomas Butler signed this version of the proposal, but Mr. Arias never did.

Based on the evidence and testimony, there was never mutual assent to a definitive version of the July 11, 2018 Employment Agreement. *Lar-Rob Bus Corp.*, 170 Conn. at 402 ("[f]or a valid modification, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense if they are to vary the contract in any way.") (citations omitted). Rather, there was a purported agreement by each party to different terms that were never fully accepted and adopted by the other party. Under Connecticut law, "[c]ourts do not rewrite contracts for the parties," but will instead bind parties to express terms of their contract absent countervailing policy considerations. *Szydlo v. United States*, No. 3:16-cv-0127 (VLB), 2017 WL 125016 at *6 (D. Conn. Jan. 12, 2017) (citing *Herbert*, 236 Conn. at 762). There is, therefore, no July 11, 2018 Employment Agreement from which A Royal Flush can enforce a right for the Motion for Preliminary Injunction.

### 2. Absent a Contractual Right that can be Enforced, A Royal Flush is Unlikely to Succeed on the Merits

Here, the restrictive covenants in question are not enforceable because there is no valid contract. Absent the underlying contract, there is nothing to enjoin. Moreover, without a likelihood of success on the merits, this Court need not reach the related questions of irreparable harm or balance of the equities. The motion for preliminary injunction with respect to the July 11, 2018 Employment Agreement therefore is denied.[5]

---

[5] At the preliminary injunction stage, this Court does not and need not reach the issue of whether the July 11, 2018 Employment Agreement otherwise entitles A Royal Flush to some monetary

**IV.    CONCLUSION**

For the foregoing reasons, A Royal Flush's motion for a preliminary injunction is

**GRANTED in part and DENIED in part**.

The Restrictive Covenants Agreement shall be enforceable against Mr. Arias and, until

July 13, 2019, Mr. Arias is enjoined from disclosing any confidential customer information

related to A Royal Flush clients, proprietary business information related to A Royal Flush, or

working in any capacity where his services would be used for direct competition with A Royal

Flush in the Connecticut, New York, New Jersey, Massachusetts, or Pennsylvania markets.

At this time, no evidence supports a finding that Mr. Arias has violated these conditions.

But this Court retains the jurisdiction to enforce any future legal remedy related to enforcement

of the Restrictive Covenants Agreement, including temporary or permanent injunctive relief,

damages, or attorney's fees.

The July 11, 2018 Employment Agreement, however, cannot provide a basis for a

preliminary injunction and the request for such relief under this agreement therefore is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of September, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

relief under a quasi-contract or quantum meruit theory. *See, e.g., Herbert S. Newman and Partners PC*, 236 Conn. at 768 (holding that a recovery premised on estoppel "is predicated on proof of misleading conduct resulting in prejudice to the other party"). To the extent a monetary recovery is available, the availability of any such relief would mean the absence of the irreparable harm necessary for a preliminary injunction. *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("where monetary damages may provide adequate compensation, a preliminary injunction should not issue").