## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

A ROYAL FLUSH, INC.,
    *Plaintiff,*

    v.

ANIS ARIAS,
    *Defendant.*

No. 3:18-cv-01206 (VAB)

## RULING AND ORDER ON MOTION TO ENFORCE STIPULATED JUDGMENT AND CROSS-MOTION TO REFORM STIPULATED JUDGMENT

A Royal Flush, Inc. ("Plaintiff") has moved to enforce the stipulated judgment against Anis Arias ("Defendant"), and Mr. Arias has moved to reform the stipulated judgment. A Royal Flush alleges that Mr. Arias violated the restrictive covenant and quarterly reporting requirements of the stipulated judgment, and moves for a finding of contempt under Federal Rule of Civil Procedure 70. Pl.'s Mot. to Enforce Stipulated J. at 2–3, ECF No. 75 (Dec. 5, 2019).

In his cross-motion, Mr. Arias alleges that the duration of the restrictive covenant in the stipulated judgment was a mistake and should be reformed under Federal Rule of Civil Procedure 60. Mem. of Law in Opp'n to Pl.'s Mot. for Contempt and in Supp. of Cross-Mot. to Reform Stip. J. at 2, ECF No. 80-1 (January 13, 2020). He also claims that A Royal Flush waived the quarterly reporting requirement by failing to request them. *Id.* at 12-13.

For the following reasons, the motion to enforce is **GRANTED** and the cross-motion to reform is **DENIED.**

For the violation of the Stipulated Judgment's requirement to submit quarterly reports, Mr. Arias is **ORDERED** to pay the sum of $1,500.00 to A Royal Flush as a sanction by **September 4, 2020**.

1

## I.      BACKGROUND

The Court assumes familiarity with the underlying record of this case.

Until July 13, 2018, Mr. Arias had been employed for over four years by A Royal Flush, a portable toilet and restroom trailer business. Ex. A: Compl. ¶¶ 3, 4, 28, Notice of Removal, ECF No. 1 at 9 (July 20, 2018) ("Compl."). On July 13, 2018, he left A Royal Flush to work for United Site Services, Inc. ("United Site Services" or "USS"), a competitor and allegedly the largest portable toilet company in the country. *Id.* ¶¶ 5, 28. United Site Services tried to hire Mr. Arias several times in the past, and as a result, A Royal Flush and Mr. Arias twice renegotiated the terms of Mr. Arias' employment. *Id*. ¶¶ 10, 12, 18, 21.

On December 28, 2017, Mr. Arias and A Royal Flush entered into a Restrictive Covenants Agreement ("RCA"), which prohibited him from competing with A Royal Flush for one year in exchange for a raise, promotion, and bonus. *Id*. ¶¶ 14, 16, 17.

On or about June 29, 2018,  Mr. Arias allegedly informed A Royal Flush that he was again approached by USS. *Id.* ¶ 18.

On July 11, 2018, the parties subsequently negotiated and entered into the Employment Agreement. *Id.* ¶¶ 20–22. The Employment Agreement allegedly "met and exceeded Defendant's initial demands" and contained a confidentiality clause, requiring Mr. Arias to "keep confidential Plaintiff's confidential information," *id.* ¶¶ 23–24; a one-year noncompete provision, prohibiting Mr. Arias "from competing with the Plaintiff for a period of one year," *id.* ¶ 25; and a two-year noncompete provision, prohibiting Mr. Arias "from competing with the Plaintiff on behalf of USS for a period of two years," *id*. ¶ 26.

On July 13, 2018, Mr. Arias "advised Plaintiff that he was resigning . . . and taking employment with USS effective on July 16, 2018." *Id.* ¶ 28.

On July 16, 2018, A Royal Flush filed a Complaint against Mr. Arias before the Connecticut Superior Court, alleging breach of contract; breach of the duty of loyalty; breach of confidentiality; breach of the Connecticut Unfair Trade Secrets Act ("CUTSA"); and breach of the Connecticut Unfair Trade Practices Act ("CUTPA"). Compl. ¶¶ 28–34.

On July 20, 2018, Mr. Arias removed the action to this Court. Notice of Removal.

On July 30, 2018, A Royal Flush moved for a preliminary injunction against Mr. Arias to enforce the written agreements between the parties. Mot. for Prelim. Inj., ECF No. 11 (July 30, 2018). This Court concluded that "[t]he [2017] Restrictive Covenants Agreement shall be enforceable against Mr. Arias [] until July 13, 2019." *A Royal Flush v. Arias*, No. 3:18-cv-01206 (VAB), 2018 WL 4539677, at *13 (D. Conn. Sept. 21, 2018). But "[b]ased on the evidence of testimony, there was never mutual assent to a definitive version of the July 11, 2018 Employment Agreement." *Id.* at 12. As a result, the 2018 EA could not be enforceable.

On December 7, 2018, the parties moved for the Court to enter on the docket the agreed-to stipulated judgment ("Stipulated Judgment"). Joint Mot. for J., ECF No. 71 (Dec. 7, 2018).

On December 28, 2018, the Court granted the motion, Order, ECF No. 72 (Dec. 28, 2018), and entered the Stipulated Judgment on the docket, Stip. J., ECF No. 73 (December 28, 2018).

The Stipulated Judgment included a money judgment against Mr. Arias in the amount of $1,500.00, Stip. J. at 1, and, *inter alia*, enjoined Mr. Arias from competing with A Royal Flush for one year and from specifically competing with United Site Services in Connecticut, Massachusetts, New York, New Jersey, and Pennsylvania for two years*, id.* at 2. The Agreement did permit Mr. Arias to work for United Site Services, but only on the West Coast. Stip. J. at 3.

The Agreement required Mr. Arias to "submit statements, under oath, to the A Royal Flush, through counsel, beginning on February 20, 2019 and every three months thereafter through July 14, 2020, attesting to his compliance with this Stipulated Judgment." Stip. J. at 3.

On December 2, 2019, A Royal Flush sought to enforce the Stipulated Judgement and to find Mr. Arias in contempt against Mr. Arias, and claimed that Mr. Arias breached the terms of the Stipulated Judgment. Notice of Mot., ECF No. 75 (Dec. 5, 2019): Pl.'s Mem. of Law to Enforce Stip. J., ECF No. 75-1 (Dec. 5, 2019) ("Pl.'s Mem.").

On January 10, 2020, Mr. Arias filed a cross-motion[1] opposing A Royal Flush's motion and seeking to reform the Stipulated Judgment. Notice of Mot., ECF No. 80 (Jan. 13, 2020); Mem. of Law in Opp'n to Pl.'s Mot. for Contempt and in Supp. of Cross-Mot. to Reform Stip. J., ECF No. 80-1 (January 13, 2020) ("Def.'s Opp'n and Cross-Mot.").

On February 3, 2020, A Royal Flush opposed Mr. Arias's cross-motion. Pl.'s Mem. of Law in Opp'n to Def.'s Opp'n and Cross-Mot. and in Further Supp. of Pl.'s Mot. for Contempt, ECF No. 84 (Feb. 3, 2020) ("Pl.'s Reply").

## II.     STANDARD OF REVIEW

### A.  Review of Stipulated Judgments

"As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees." *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000) (internal quotations omitted) (citing *Peacock v.*

---

[1] Although Mr. Arias seeks relief under Rule 60 of the Federal Rules of Civil Procedure, the Court construes his motion as a motion for reconsideration under either Local Rule 7(c) or Rule 59 of the Federal Rules of Civil Procedure, although there is no difference in the underlying legal standard in reviewing either motion. *See Kelly v. Honeywell Int'l, Inc.*, No. 3:16-cv-00543 (VLB), 2017 WL 6948927, at *2 (D. Conn. May 25, 2017) ("A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e)." (citing *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991)). "[E]ach seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford*, 942 F.2d at 133. The Court also will address the applicability of Rule 60 of the Federal Rules of Civil Procedure, to the extent necessary.

*Thomas*, 516 U.S. 349, 356 (1996)). This jurisdiction includes proceedings to enforce a

judgment. *See id.* ("As a result of its entry of judgment . . . the district court possessed ancillary

jurisdiction to enforce the judgment through supplementary proceedings.").

"A consent decree is primarily a means by which parties settle their disputes without

having to bear the financial and other costs of litigating." *Local No. 93, Int'l Ass'n of

Firefighters v. Cleveland*, 478 U.S. 501, 528 (1986). These judgments closely resemble contracts

because "their terms are arrived at through mutual agreement of the parties." *Kozlowski v.

Coughlin*, 871 F.2d 241, 245 (2d Cir. 1989) (citing *Cleveland*, 478 U.S. at 519). Consequently, a

party may not avoid the bargained-for obligations of a consent decree merely because it did not

bring the dispute to trial. *Id.*

### B.  Motion for Relief from Judgment

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to "alter or

amend a judgment" no later than 28 days after the entry of the judgment. Courts consider a

motion made under Rule 59(e) of the Federal Rules of Civil Procedure a motion for

reconsideration. *See Krohn v. N.Y. City Police Dep't.*, 341 F.3d 177, 179 (2d Cir. 2003) (noting

that a party timely filed for reconsideration under Fed R. Civ. P. 59(e)).

 "The standard for granting [a motion for reconsideration] is strict, and reconsideration

will generally be denied unless the moving party can point to controlling decisions or data that

the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)

(citations omitted). Indeed, "[m]otions for reconsideration shall not be routinely filed and shall

satisfy the strict standard applicable to such motions." D. Conn. L. Civ. R. 7(c); *see also Kolel

Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) ("It

is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) (citing *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 130 (S.D.N.Y. 2000)). "A motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]'" *Mandell v. Doloff*, No. 3:17-cv-01282-MPS, 2018 WL 3677895, at *1 (D. Conn. Aug. 2, 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal citation and quotation marks omitted)); *accord Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Federal Rule of Civil Procedure 60(b) permits a movant to avoid the effect of a final judgment on the following bases:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "The decision whether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the district court[.]" *Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir. 2012) (citation omitted). "A Rule 60 motion 'may not be used as a substitute for appeal' . . . a claim based on legal error alone is inadequate." *Nelson v. City of Stamford*, 2012 WL 3155999, at *2 (D. Conn. Aug. 3, 2012) (quoting *United Airlines, Inc. v. Brien*, 588 F.3d 62 (2d Cir. 2009)).

### C.  Motion to Enforce Judgment for Specific Act

Under Rule 70, a court may enforce a judgment by ordering a disobedient party "to perform any other specific act [after] the party fail[ed] to comply within the time specified" or by holding the disobedient party in contempt, also known as the contemnor. Fed. R. Civ. P. 70(a), (e). "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citing *Hart Shaffner & Marx v. Alexander's Dep't Stores, Inc.*, 341 F.2d 101, 102 (2d Cir. 1965)). In the Second Circuit, the movant requesting a finding of contempt must establish that (1) the order that the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *Id.* (citing *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d. Cir. 1989)).

### III.    DISCUSSION

A Royal Flush alleges that Mr. Arias breached the terms of the Stipulated Judgment by working for United Site Services in Connecticut, and failing to affirm under oath and in writing to A Royal Flush that he was in compliance with the Stipulated Judgement. Pl.'s Mem. at 3. A

Royal Flush alleges that, on separate occasions, a hired private investigator and an employee

each observed Mr. Arias working for United Site Services in Connecticut. *Id.*

Mr. Arias argues that that the two-year noncompete clause as to his employment with

United Site Services, as set forth in the Stipulated Judgment, is legally unenforceable for lack of

mutual assent and agreement. Def.'s Opp'n and Cross-Mot. at 12. Mr. Arias also claims that

because A Royal Flush did not request the sworn statements of compliance from him, that

requirement was waived. *Id.*

The Court addresses both issues in turn, starting with the reformation issue.

### A. Reformation of the Stipulated Judgment

Under Connecticut law, courts may reform agreements between parties only if the

agreement does not express the true intentions of the parties "as the result of a mistake, or

mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part

of the other." *Lopinto v. Haines*, 185 Conn. 527, 531 (1981) (quoting *Moffett, Hodgkins &

Clarke Co. v. Rochester*, 178 U.S. 373, 385 (1900)). "To prevail in a case for reformation, it

must appear that the writing, as reformed, will express what was understood and agreed to by

both parties." *Western World Ins. Co. v. Mason Real Estate Invs*, No. 3:16-cv-1858 (DJS), 2019

WL 1754228, at *6 (D. Conn. Mar. 4, 2019) (quoting *Kaplan v. Scheer*, 192 Conn. App. 488,

500 (2018)) (internal quotation marks and alterations omitted).

A Royal Flush argues that Mr. Arias failed to comply with the Stipulated Judgment's

provisions. Pl.'s Mem. at 3. A Royal Flush asserts that Mr. Arias was working for United

Site Services in Connecticut, a prohibition until July 14, 2020. *Id.* According to A Royal Flush,

Mr. Arias's "ongoing refusal to comply with the Stipulated Judgment and his contemptuous

conduct" entitles it to a finding of civil contempt against Mr. Arias. *Id.*

In response, Mr. Arias seeks to reform the Stipulated Judgment on the grounds of equity, waiver, and laches. Def.'s Opp'n and Cross-Mot. at 2. In Mr. Arias's view:

> [t]he parties' use of a Restrictive Covenant with an end date of July 14, 2020 in the Stipulated Judgment, derived from a proposed contract which the Court specifically and repeatedly found to be legally unenforceable for lack of mutual assent and agreement, was clearly a mistake and should be declared such by this Court.

*Id*. at 12. As a result, according to Mr. Arias, a two-year restrictive covenant on his employment with United Site Services is unreasonable as a matter of law. *Id*. at 13–14.

In reply, A Royal Flush contends that "Defendant erroneously describes [the Stipulated Judgment] as an extension of a previous agreement between the parties." Pl.'s Reply at 8. Further, A Royal Flush opposes Mr. Arias's equitable arguments and motion to reform the Stipulated Judgment under Rule 60 because according to A Royal Flush, Mr. Arias cannot "contradictorily now claim, such 'give and take' negotiations did not occur or that said Stipulated Agreement, which Defendant signed upon advice of counsel is unconscionable is disingenuous." *Id*. at 9. A Royal Flush seeks "a new two-year restrictive covenant commencing the date of the Court's order" as additional relief. *Id.* at 15.

The Court agrees, in part.

Mr. Arias's motion relies primarily on a misunderstanding of this Court's previous ruling concerning the July 11, 2018 Employment Agreement. According to Mr. Arias, this Court "specifically and repeatedly ruled that a 2-year specialized restriction as to USS was unenforceable." Def.'s Opp'n and Cross-Mot. at 7.

While this Court did find that there was "never mutual assent to a definitive version of the July 11, 2018 Employment Agreement . . . . [but] [r]ather, there was a purported agreement

9

by each party to different terms that were never fully accepted and adopted by the other party,"

that conclusion was based on specific evidence:

> On July 10, 2018, Thomas Butler, Chief Executive Officer of A Royal Flush, sent Mr. Arias by e-mail an employment agreement to work as the Regional Manager of A Royal Flush's New York Region. This proposal included a salary increase, a guaranteed bonus, use of an employer vehicle, tuition reimbursement, and eligibility to participate in the employer's stock option plan. Thomas Butler signed the agreement assenting to these terms, but Mr. Arias never did, at least with respect to all of the terms.

> Instead, Mr. Arias responded with an e-mail on July 11, 2018, which contained an attachment with handwritten edits to the original employment agreement that modified and initialed changes to his base salary, tuition reimbursement provision, stock option provision, and two modifications to separation pay provisions. Mr. Arias signed this proposal assenting to these new contract terms and sent the new terms to Thomas Butler and Timothy Butler by e-mail. But neither Thomas nor Timothy Butler signed this agreement.

> On July 12, 2018, the agreement was modified once again. On that day, Thomas Butler sent Mr. Arias by e-mail another employment agreement, where the updated proposal adopted Mr. Arias' modifications to his base salary, tuition reimbursement, and one of his modifications to separation pay provisions. But two of Mr. Arias' modifications were not adopted: the second separation pay provision and the stock options provision. Thomas Butler signed this version of the proposal, but Mr. Arias never did.

*A Royal Flush*, 2018 WL 4539677, at *12 (citations omitted). Mr. Arias incorrectly states that

because the 2018 RCA was unenforceable, any two-year restrictive covenant as to his USS

employment would be unenforceable. *See* Def.'s Opp'n and Cross-Mot. at 14.

In evaluating the reasonableness of a restrictive covenant, courts consider five factors:

"(1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness

of the protection accorded to the employer; (4) the extent of the restraint on the employee's

opportunity to pursue his occupation; and (5) the extent of interference with the public's

interests." *Robert S. Weiss & Assocs., Inc. v. Wiederlight*, 208 Conn. 525, 529 n.2 (1988) (citing

*Scott v. General Iron & Welding Co., Inc.*, 171 Conn. 132, 137 (1976)); *see also S. Home Care Servs., Inc. v. Visiting Nurse Servs., Inc. of S. Conn.*, No. 3:13-cv-792 (RNC), 2014 WL 12756150, at *2 (D. Conn. March 13, 2014) (citing to the five prong test of *Scott*, 171 Conn. at 137). Under this assessment, "time and geographic restrictions in a covenant not to compete are valid if they are reasonably limited and fairly protect the interests of both parties[.]" *Wiederlight*, 208 Conn. at 529.

In finding that A Royal Flush established irreparable harm sufficient for a preliminary injunction, this Court noted the necessity of a restrictive covenant as to Mr. Arias's employment with United Site Services:

> Here, the testimony and affidavits submitted by A Royal Flush demonstrate an irreparable harm based on Mr. Arias's ability to use proprietary information to assist [USS] in gaining market share in A Royal Flush's geographic areas of operation . . . .
>
> Mr. Arias' employment with United Site Services and knowledge sharing with the company could lead directly to a dilution of market share due to customer loss and corresponding loss of goodwill in those service areas where A Royal Flush operates. And the long-term loss of customers, permanent loss of revenues, and the loss of referral business from clients add to the likelihood of A Royal Flush's irreparable injury. Mr. Arias' knowledge is highly valuable to both employers and the nature of the industry place a high value on the knowledge and experience Mr. Arias accumulated, while working for A Royal Flush. But the irreparable harm would be limited to only those states where A Royal Flush operates . . . .
>
> While, on this record, there is no evidence that any confidential information has been disclosed or that any impermissible activity within A Royal Flush's places of operation occurred, A Royal Flush nevertheless is entitled to an injunction in order to clarify to Mr. Arias, as well as United Site Services, what Mr. Arias may and may not do until the expiration of this Restrictive Covenants Agreement.

*A Royal Flush*, 2018 WL 4539677, at *10–11.

11

The restrictive covenant in the Stipulated Judgment bound Mr. Arias through July 14, 2020, from "engag[ing] in any business activity or legally, equitably or beneficially, directly or indirectly, participate in any capacity . . . where such activity or capacity would be in competition with A Royal Flush . . . in the following areas: Connecticut, Massachusetts, New York, New Jersey and Pennsylvania." Stip. J. at 2.

Based on this record, which includes the testimony provided to the Court previously, there is nothing to suggest that the restrictive covenant in the Stipulated Judgment, as agreed-to by the parties, is unreasonable, based on the fairness of protection accorded to A Royal Flush, the extent of the restraint on Mr. Arias's ability to pursue his occupation, and the extent of interference with the public interest. *See A Royal Flush*, 2018 WL 4539677, at *11 ("Indeed, [Mr. Arias's] voluntary assent to restricted employment opportunities weights against him in the balance of equities." (internal citations omitted)).

Furthermore, neither the length of time of the restriction operates nor the geographical area covered support Mr. Arias's arguments for reformation. A Royal Flush has offices and does business in Connecticut, Massachusetts, New Jersey, Pennsylvania and New York, *A Royal Flush*, 2018 WL 4539677, at *1, and the restrictive covenant only covers those states. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 73 (2d Cir. 1999) ("The main limitation on covenants not to compete is that they will be enforced only to the extent necessary to protect the employer's legitimate interests." (citing *Reed, Roberts Assoc., Inc. v. Strauman*,  40 N.Y.2d 303, 386 (1976)). Consequently, the Court concludes that the Stipulated Judgment's restrictive covenant is reasonable.

Mr. Arias's remaining arguments under Rule 60(b) are equally unpersuasive, and seemingly relies primarily on mistake as a defense. *See* Aria Decl. ¶¶ 3, 4, 11, 12, 14. Mr. Arias

both claims that he was "mistaken that the unenforceable date was a moot issue and unimportant," Arias Decl. ¶ 12, and that he "would not have simply accepted the otherwise unenforceable 2020 RCA date" had he been "able to foresee the changes in management at USS or that [he] would be ordered to change his duties" such that he was in violation of the Stipulated Judgment, Def.'s Opp'n and Cross-Mot. at 9.

The right to reformation requires mutual, not unilateral mistake. *See Greenwich Contracting Co. v. Bonwit Const. Co,*, 156 Conn. 123, 127 (1968) ("If the right to reformation is grounded solely on mistake, it is required that the mistake be mutual"). Mr. Arias admits agreeing to the two-year geographic restriction, Arias Decl. ¶ 4, but alleges that he "honestly completely forgot about the specific terms of the Stipulated Judgment," *id.* ¶ 11. These facts do not support a finding of mutual mistake, but demonstrate a unilateral mistake, which does not justify reformation of the Stipulated Judgment. *See Lopinto*, 185 Conn. at 533–34 (noting that reformation for mistake or fraud requires "evidence of a very high order' to overcome . . . 'the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties" (citing *George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219 (1978)).

In addition, Mr. Arias also alleges reformation for misrepresentations and/or fraud, Def.'s Opp'n and Cross-Mot. at 10–11, and appears to suggest that the bargaining process was unfair. *See e.g.*, *id.* at 12 ("The ARF plaintiff, owned and managed by attorneys at law, cannot establish any exchange of extra-substantial consideration given to Mr. Arias in exchange for the extension of the 2017 RCA for a full year beyond its clear terms.").

A Rule 60(b)(3) motion must be made "no more than a year after the entry of judgment or order of the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "This limitations period is

'absolute.'" *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (quoting 12 JAMES WM. MOORE, *Moore's Federal Practice* ¶ 60.65[2][a], at 60–200 (3d ed. 1997)). The Stipulated Judgment was entered on the docket on December 28, 2018, and Mr. Arias made his cross-motion more than a year later, on January 13, 2020, which makes it untimely.

Even if Mr. Arias's motion was timely, "a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. N.Y. Univ.,* 865 F.2d 478, 484 (2d Cir. 1989) (citing *Mastini v. Am. Tel. & Telegraph Co.*, 369 F.2d 387, 379 (2d Cir. 1966)). Mr. Arias presents no facts that support such a finding. *See Sturm v. Harb. Dev., LLC*, 298 Conn. 124, 142 (2010) ("The essential elements of an action in common law fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation." (internal citations omitted)).

Indeed, Mr. Arias's voluntary assent to restricted employment opportunities does not relinquish him from them thereafter. Mr. Arias and his counsel admit that they freely negotiated and agreed to the two-year restriction for the Stipulated Judgment. *See* Def.'s Opp'n and Cross-Mot. at 7 ("The Plaintiff insisted on a 2-year restriction pertaining to USS . . . ." to which Mr. Arias's attorney "took the path of least resistance and simply allowed Arias to stipulate to a 2-year RCA as to USS."); *cf. JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (discussing adhesion contracts as ones "formed as a product of a gross inequality of bargaining power between parties" although it was not "wholly clear" that was plaintiff's argument); *Russell Pub. Grp., Ltd. v. Brown Printing Co.*, No. 13-civ-5193 (SAS), 2014 WL 6790762, at *7 (S.D.N.Y. Dec. 2, 2014) ("[N]or is there any evidence of [defendant] having had

an unfair bargaining position. All indications show that the [] Agreement . . . was the result of fair bargaining and mutual assent.").

Nor has Mr. Arias demonstrated any "extraordinary circumstances" required for Rule 60(b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 537–38 (2005) (citing *Ackermann v. United States*, 340 U.S. 193, 195 (1950)) (discussing the extraordinary-circumstances requirement of 60(b)(6)). As A Royal Flush notes, if Mr. Arias "felt a two-year restrictive covenant was not reasonable, the time to have raised the issue was prior to entering into the Stipulated Judgment, not nearly thirteen [] months after the Court so-ordered the agreement." Pl.'s Reply at 3.

Under Connecticut law, "[c]ourts do not rewrite contracts for the parties," but will instead bind parties to express terms of their contract absent countervailing policy considerations. *Szydlo v. United States*, No. 3:16-cv-0127 (VLB), 2017 WL 125016, at *6 (D. Conn. Jan 12., 2017) (citing *Herbert S. Newman and Partners, P.C. v. CFC Const. Ltd. P'ship*, 236 Conn. 750, 762 (1996)). This Court declines to relinquish Mr. Arias from the terms of the Stipulated Judgment, which the parties freely negotiated and agreed on. A motion for reconsideration allows a party to seek error correction; it does not permit a party to re-write history. *See Barham v. Wal-Mart Stores, Inc.*, No. 3:12-cv-1361 (VAB), 2018 WL 3213289, at *3 (D. Conn. June 29, 2018).

Accordingly, the Court will deny Mr. Arias's motion to reform the Stipulated Judgment as to the restrictive covenant.[2]

### B.  Enforcement of the Stipulated Judgment and Sanctions

A district court's inherent power to enact sanctions against a party is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to

---

[2] Although A Royal Flush seeks to extend the restrictive covenant for another two-year term effective from the date of this order, Pl.'s Reply at 15–16 (citing *United Rentals, Inc. v. Frey*, No. 3:10CV1628 (HBF), 2011 WL 693013 (D. Conn. Feb. 18, 2011)), the Court declines to do so.

achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)) (internal quotation marks omitted).

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *Terry*, 886 F.2d at 1351; *see also Jolen*, *Inc. v. Kundan Rice Mills, Ltd.*, No. 19-cv-1296 (PKC), 2019 WL 2949988, at *3 (S.D.N.Y. July 9, 2019) (applying the civil contempt standard to impose an escalating fine against defendant); *Allstate Ins. Co. v. Nair*, No. 3:10-cv-88 (SRU), 2011 WL 1832774, at *2 (D. Conn. May 13, 2011) (applying the civil contempt standard to impose a $500 civil contempt fine against defendant).

A clear and unambiguous order must allow those within its scope "to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (citing *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)). The violation need not be willful unless the court imposes attorney's fees and costs against the contemnor. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984))*; see also Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (discussing the willfulness requirement needed for awarding attorney's fees).

A Royal Flush seeks to find Mr. Arias in contempt of the terms of the Stipulated Judgment because of his failure to file quarterly reports.

Mr. Arias argues that A Royal Flush waived the quarterly reporting requirement by failing to request these statements from him. Def. Opp'n and Cross-Mot. at 12–13. According to

Mr. Arias, this amounts to an unreasonable delay under the equitable doctrine of laches that should bar A Royal Flush's claim for relief on this basis. *Id.*

In reply, A Royal Flush asserts that "[t]here is no provision in the Stipulated Judgment that indicates [the quarterly reporting] provision is preconditioned on Plaintiff requesting copies of same from Defendant." Pl.'s Reply at 11. In addition, A Royal Flush argues that laches is inapplicable because "[t]here [was] no delay in Plaintiff seeking the relief requested from the Court and even if there were determined to be delay, it was neither unreasonable nor does it prejudice Defendant." *Id.* at 13.

The Court agrees.

The quarterly reporting requirement in the Stipulated Judgment was clear and unambiguous:

> Defendant shall submit statements, under oath, to the Plaintiff, through counsel, beginning on February 20, 2019 and every three months thereafter through July 14, 2020, attesting to his compliance with this Stipulated Judgment.

Stip. J. at 3. A Royal Flush has submitted evidence that Mr. Arias failed to comply, and Mr. Arias has not denied his failure to submit a single quarterly report to A Royal Flush. *See* Butler Aff. ¶ 9, ECF No. 75-2 (Dec. 5, 2019) ("As of this date, [A Royal Flush's General Counsel] ha[s] not received any sworn oaths from the defendant."). Instead, Mr. Arias "submits that [A Royal Flush]'s failure to request the quarterly reports indicated [to Mr. Arias] that [it] had moved on from the dispute." Def.'s Opp'n and Cross-Mot. at 13.

But the express language of the Stipulated Judgment does not impose the burden on A Royal Flush to request the quarterly reports from Mr. Arias, and this Court will not import ambiguity where there is none. *See Talmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498 (2000) ("Where the language of the contract is clear and unambiguous,

17

the contract is to be given effect according to its terms . . . . [s]imilarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (citing *Lawson v. Whitey's Frame Shop*, 241 Conn. 678, 686 (1997)); *Heyman v. CBS, Inc.*, 178 Conn. 215, 225 (1979) ("[a] term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument").

Mr. Arias's laches argument is equally unavailing.

Laches is an equitable defense to claims seeking equitable relief. *See Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) ("[Laches] is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." (quoting *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997))). The party asserting a laches defense must "come[] before the court with clean hands." *Eppendorf-Netheler-Hinz GMBH v. Nat'l Scientific Supply Co.*, 14 F. App'x 102, 105 (2d Cir. 2001), and establish that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay," *Ikelionwu,* 150 F.3d at 237 (citing *Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994)).

A Royal Flush learned that Mr. Arias was violating the quarterly reporting requirements on February 20, 2019, when he failed to submit the initial statement. Pl.'s Reply at 13. In August 2019, A Royal Flush learned that he was violating the geographic employment restriction. *Id.* In September 2019, A Royal Flush sent him a cease and desist letter, before ultimately filing seeking relief in this Court in December 2019. *Id.* at 2. After receiving the cease and desist letter, Mr. Arias nonetheless failed to provide the quarterly report due in November 2019. *Id.* at 14.

A Royal Flush did not "inexcusably delay[] in taking action," *see Ikelionwu*, 150 F.3d at 237, and Mr. Arias was not prejudiced by the delay; in fact, the delay offered Mr. Arias time to adhere to the Stipulated Judgment, which he did not. In any event, his actions do not support his ability to "come before the court with clean hands." *See Eppendorf-Netheler-Hinz. GMBH*, 14 F. App'x at 105.

According to Mr. Arias, he and his counsel reviewed and agreed to the terms of the Stipulated Judgment as written, including the quarterly report requirement, which imposed no requirement on A Royal Flush to request these statements from Mr. Arias. Stip. J. at 3; *see F.D.I.C. v. Cromwell Crossroads Assocs., Ltd. P'ship*, 480 F. Supp. 2d 516, 525–26 (D. Conn. 2007) (finding that the defendants were not entitled to a laches defense because "[t]hey agreed to the terms of the Stipulated Judgment . . . failed to make most of [the required] payments, and have offered no excuse for this failure," and as such "the court does not believe that the [defendants] come before the court with clean hands").

Mr. Arias does not explain his failure to notify A Royal Flush or the Court when he allegedly began working in the restricted area for United Site Services on or about September 26, 2019. Arias Decl. ¶ 8. Nor does he explain his failure to submit the November 2019 quarterly report after A Royal Flush's September 2019 cease-and-desist letter notified him of his noncompliance. Arias Decl. ¶ 7.

Accordingly, the Court will find Mr. Arias in contempt for failing to adhere to the Stipulated Judgment's quarterly reporting requirements.

A Royal Flush requests an award for costs and expenses associated to its enforcement of the Stipulated Judgment, including reasonable attorneys' fees and the costs for the private investigator. Pl.'s Mem. at 7.

Mr. Arias submits that his "separation with [A Royal Flush] should be determined legally complete and that, in the event [he] is found in technical violation . . . , that any contempt award be modest." Def.'s Opp'n and Cross-Mot. at 15. He asks the Court to consider his current family and economic situation, as well as that A Royal Flush "previously agreed to accept $1500 . . . in settlement." Arias. Decl. ¶ 14.

As discussed above, Mr. Arias has failed to comply with the terms of the bargained-for and agreed-to Stipulated Judgment, thus necessitating these filings and costs incurred by A Royal Flush. He also has worked in one of the geographic areas prohibited by the Stipulated Judgment.

Nevertheless, Mr. Arias made a decision out of economic necessity: United Sites Services no longer gave him the option of working routes not in conflict with the Stipulated Judgment. *See* Def.'s Opp'n and Cross-Mot. at 8 ("As of the late summer of 2019, having worked with USS west coast operations for over a year, the composition of the executive board of USS changed . . . [and Mr.] Arias was instructed by USS to take a secondary position as the Operations Manager for Branford, CT and Stamford, CT."); *see also* Arias Decl. ¶ 14 ("I am not in a position of power to buck my orders received from the current management at my current employer USS.").

While this economic situation should have resulted in him coming to A Royal Flush to renegotiate the terms of the Stipulated Judgment, his decision reflects an unfortunate and forced circumstance, rather than a willful disregard of the Stipulated Judgment. *See Allstate*, 2011 WL 1832774 at *4 (finding a willful violation when the defendant "demonstrated a flagrant disregard for the terms" of the permanent injunction). Indeed, the record reflects that Mr. Arias had good reason to believe that his employment with United Site Services would not result in a violation of the Stipulated Judgment. *See A Royal Flush*, 2018 WL 4539677, at *10–11 (emphasizing testimony of Ron Carapezzi, then-CEO of United State Services, "that Mr. Arias [did] not and

20

will not work within A Royal Flush's geographic areas of operation," nor did he "work in the portable toilet business of United Site Services").

Moreover, although A Royal Flush's delayed decision to enforce the specific terms of the Stipulated Judgment with respect to the failure to file the quarterly reports does not excuse Mr. Arias's liability, more prompt action on A Royal Flush's part, such as notification after any such failure, may have mitigated its attorney's fees and costs. *Compare* Butler Aff. ¶ 8 (indicating deadlines of February 20, 2019, May 20, 20219, and August 20, 2019 for Mr. Arias's quarterly reports), *with id.* ¶ 11 ("formal demand was made upon the defendant on September 13, 2019 to cease and desist from his actions and conduct"); *see also* Arias. Decl. ¶ 11 (stating that he "completely forgot" about the terms of the Stipulated Judgment because he believed A Royal Flush "had dropped all interest" in him and "[s]ince the Stipulated Judgment was made, [he was] not . . . asked to do anything"). As a result, on this record, there is an insufficient basis for finding Mr. Arias's violations willful to warrant the imposition of attorney's fees and costs.

The Court does, however, find Mr. Arias in civil contempt for violating the quarterly reporting requirement of the Stipulated Judgment, and will impose a fine of $1,500.00, the initial money judgment entered against Mr. Arias in the Stipulated Judgment, one consistent with his previous violation of an agreement with A Royal Flush. *See Allstate*, 2011 WL 1832774, at *3 ("The ultimate consideration is whether the coercive sanction—here, a fine—is reasonable in relation to the facts.").

Accordingly, Mr. Arias will be ordered to pay $1,500.00 to A Royal Flush as a sanction for violating the quarterly reporting requirement of the Stipulated Judgment.

**IV.   CONCLUSION**

For the reasons explained above, the Court **GRANTS** A Royal Flush's motion to enforce the stipulated judgment and **DENIES** Mr. Arias's cross-motion to reform the stipulated judgment.

For the violation of the Stipulated Judgment's requirement to submit quarterly reports, Mr. Arias is **ORDERED** to pay the sum of $1500.00 to A Royal Flush as a sanction by **September 4, 2020**.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July, 2020.

>    /s/ Victor A. Bolden       
> Victor A. Bolden
> United States District Judge